**Wendell JONES, Individually and on behalf of all others similarly situated, Plaintiff,**

v.

**The GOODYEAR TIRE AND RUBBER COMPANY, d/b/a Goodyear Service Stores, a Division of Goodyear Tire and Rubber Company, Defendant.**

Civ. A. No. 76–2232.

United States District Court,
E. D. Louisiana.

Dec. 23, 1976.

Elliot G. Snellings, New Orleans, La., for plaintiff.

Peter F. Liberto, New Orleans, La., for defendant.

ALVIN B. RUBIN, District Judge:

## I.

This case raises the issue, often considered by federal trial courts, but never yet definitely decided by an appellate court, whether the defendant in a Truth-in-Lending suit in a federal court may invoke ancillary jurisdiction to counterclaim for the amount due by the debtor. The decision of this issue need not be categorical; the circumstances of this case are determinative. The court holds that the state law counterclaim is not compulsory within the meaning of Federal Rule of Civil Procedure 13(a), and, because the court lacks independent jurisdiction of it, it must be dismissed.

The plaintiff bought merchandise from Goodyear in July, 1975, and entered into a retail installment contract requiring him to pay 17 monthly installments of $24.00 each. A year later, he brought this class action alleging that the disclosures made at the time of the contract violated the provisions of the Truth-in-Lending Act. 15 U.S.C. § 1601 et seq. Goodyear filed an answer and counterclaim.

The counterclaim, apparently erroneously, alleged that the plaintiff had been delinquent in the payment of his account from the time of the confection of the contract in July, 1975 until the filing of this suit. However, it is undisputed that the plaintiff properly paid each monthly installment until February 1976. On February 20, 1976, the plaintiff received a check from his employer in the amount of $188.09 for services rendered. He went to one of Goodyear's service stores with the check. Goodyear cashed the check, but it is disputed whether plaintiff tendered the check for his $24.00 monthly payment and applied the check to his obligation, receiving the balance in cash, or whether he cashed the check first and applied some of the cash to his contract.

The check was later returned from the bank because of insufficient funds in the maker's account. Thereafter the defendant added the amount of the bounced check to the balance due on the retail installment contract. In August, 1976, the plaintiff sent defendant a check in the amount of $182.09, the total balance due on the account, but indicated that the payment was "under protest".

The plaintiff contends that he has never defaulted on a contract payment, that the transaction involving the endorsement of his employer's check was independent of, and unrelated to, the payment of his account. The defendant insists that the sum of $182.09, the entire balance of his contract, is now due.

## II.

■ There must be independent federal jurisdiction of a permissive counterclaim for it to be assertible in a federal court. However, if the counterclaim is compulsory then jurisdiction to entertain it exists because decision of it is ancillary to resolution of the claim that initially conferred federal jurisdiction. *Moore v. N. Y. Cotton Exchange,* 1926, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750. Since there is no independent jurisdictional ground for Goodyear's claim, it may be entertained only if Goodyear is required to assert it in this proceeding, that is, only if it is compulsory. Rule 13(a), Federal Rules of Civil Procedure, characterizes a counterclaim as compulsory if "it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." This test does not furnish a bright line, and certain criteria have been proposed to identify compulsory counterclaims. They are generally stated as follows:

1. Are the issues of fact and law raised by the claim and the counterclaim largely the same?

2. Would res judicata bar a subsequent suit on the defendant's claim absent the compulsory counterclaim rule?

3. Will substantially the same evidence support or refute the plaintiff's claim as well as defendant's counterclaim?

4. Is there any logical relation between the claim and the counterclaim?

See Wright and Miller, 6 Fed.Prac. and Pro., Sec. 1410 (1970).

■ That there is room for difference of opinion with respect to whether counterclaims for the debtor's balance due to his creditor may be brought when the debtor sues the creditor under the Truth-in-Lending Act is demonstrated by the box score presented in briefs:

A. Cases holding that the counterclaim is compulsory and should be entertained. *Rollins v. Sears, Roebuck & Co.,* 71 F.R.D. 540, E.D.La.1976, 45 L.W. 2029; *Mims v. Dixie Financial Corp.,* 426 F.Supp. 627, N.D.Ga. 1976; *Gibson v. Blazer Financial Services, Inc.* No. 74–170, E.D.La. Sept. 9, 1975.

B. Cases holding that the counterclaim is permissive and must be dismissed absent independent federal jurisdiction: *Ball v. Connecticut Bank and Trust,* D.Conn.1975, 404 F.Supp. 1; *Agostine v. Sidcon Corporation,* E.D. Pa.1975, 69 F.R.D. 437; *Shriner v. Sears, Roebuck & Co.,* No. 75–676, W.D.Pa., Jan. 16, 1976; *Bloomer v. Household Consumer Discount Co.,* No. 75–1023, W.D.Pa., Jan. 19, 1976.

Here, the issues of fact and law arising out of the claim are different from those arising from the counterclaim. The NSF check claim is entirely discrete. Even if the claim is asserted in a different form—that the plaintiff is delinquent for failing to pay his monthly installment—the issues of fact are different from those necessary to prove or disprove the claim. They would not take long to hear, but they are different. The legal issues arising out of whether Goodyear violated federal law, and whether the plaintiff owes for a check (if the claim be as Goodyear now presents it), or defaulted under his contract (should Goodyear attempt to assert the obvious alternate), are not only different; they must be resolved on principles drawn from different bodies of law.

There is no jury trial for the plaintiff.[1] Yet the defendant might demand jury trial of the counterclaim. This would not only retard the litigation it would bifurcate decision. It would transform a case likely resolvable on summary judgment motion into a full fledged trial of only tangentially related factual matters.

This is a class action. If certified under Rule 23(b)(3), or even under (b)(2), with provision for assertion of individual claims, the court would be required to hear not one but a myriad of counterclaims. Alternatively, the presence of multiple counterclaims might require abandonment of the class form of litigation.

It is not asserted that a decision in this case would be res judicata of the counterclaims. As Judge Bechtle said, in *Agostine v. Sidcon Corp.,* E.D.Pa.1975, 69 F.R.D. 437, "Even under the 'logical relation' test, which is the most widely used by the courts, [the] counterclaims cannot be said to be compulsory under Rule 13(a). *Great Lakes Rubber Corporation v. Herbert Cooper Co.,* supra, D.C.Pa., 286 F.2d [631] at 634; Wright 7 Miller, supra, § 1410 at 48." 69 F.R.D. at 442.

The other considerations mentioned by Judge Bechtle are forceful:

Moreover, the purpose of the Act is to assure a meaningful disclosure of credit terms so that consumers will be able to readily compare various credit terms available to them and avoid uninformed use of credit. See 15 U.S.C. § 1601; *Mourning v. Family Publications Service, Inc.* 411 U.S. 356, 363–366, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). To allow [the] counterclaims would effectively frustrate such a purpose, by involving this Court in a myriad of factual and legal questions that are logically unrelated to the alleged Truth-in-Lending violations.
Id.

 This is not to hold that it may not be permissible, if and when damages are computed, to provide a procedure for offsets, for example, by escrow of funds until a state adjudication of disputed claims is obtained. That, or some other procedure, may eventually be appropriate in the class action. Sufficient unto this day are the issues thereof. For the reasons stated the counterclaim is DISMISSED.

---

1. "In the context of the historical analysis described hereinabove a private civil action to enforce the Truth-in-Lending Act appears to be sui generis; the Act requires the disclosure of specific items of information, in a particular manner, in different types of consumer credit transactions. This type of action appears to have been unknown at common law and no analogy to an action at common law can be perceived. Therefore, there is no Seventh Amendment right to a jury in a private action for violations of the Act."
*Warren v. G. A. C. Finance Corp.,* United States District Court, Northern District of Georgia, Atlanta Division, Civil Action No. 17980, July 18, 1973. CCH, CCG, § 98968.