Theresa PLANT, Plaintiff-Appellant,

v.

BLAZER FINANCIAL SERVICES, INC. OF GEORGIA, Defendant-Appellee.

No. 77–2034.

United States Court of Appeals, Fifth Circuit.

July 23, 1979.

---

Ralph Goldberg, Graydon W. Florence, Jr., Atlanta, Ga., for plaintiff-appellant.

Arthur Gregory, Atlanta, Ga., for defendant-appellee.

Before MORGAN, RONEY and VANCE, Circuit Judges.

RONEY, Circuit Judge:

In this truth-in-lending case, we resolve two important issues to this field of the law. First, we decide that an action on the underlying debt in default is a compulsory counterclaim that must be asserted in a suit by the debtor on a truth-in-lending cause of action. Second, we hold that a successful plaintiff in a truth-in-lending suit is entitled to have her attorneys paid from the award for attorney's fees and not have those fees setoff against a counterclaim judgment on the debt in favor of the defendant against the plaintiff creditor.

Although plaintiff prevailed on her truth-in-lending claim in this case, both her award and the attorney's fees allowed were setoff against the lender defendant's counterclaim on the underlying debt. In an appeal involving issues similar to those raised in the companion cases of *Carr v. Blazer Financial Services, Inc.*, 598 F.2d 1368 (5th Cir. 1979) and *Williams v. Blazer Financial Services, Inc.*, 598 F.2d 1371 (5th Cir. 1979), also decided today, plaintiff attacks the jurisdiction of the court to entertain the counterclaim, the rejection of defenses to the counterclaim based upon Georgia law, and the offset of attorney's fees against the counterclaim judgment. While upholding the judgment of the district court on the state law questions and agreeing that a counterclaim on the debt evidenced by the note which is the subject of a truth-in-lending action is compulsory, we reverse the offset of attorney's fees, holding that an award of attorney's fees under this Act is not subject to setoff against the debtor's outstanding debts to the creditor.

On July 17, 1975 plaintiff Theresa Plant executed a note in favor of defendant Blazer Financial Services, Inc. for $2,520.00 to be paid in monthly installments of $105.00. No payments were made on the note. In March 1976 plaintiff commenced a civil action under § 1640 of the Truth-in-Lending Act, 15 U.S.C.A. § 1601 *et seq.*, for failure to make disclosures required by the Act and by Regulation Z, 12 C.F.R. § 226.1 et seq. (1978), promulgated thereunder.[1] Defendant counterclaimed on the note for the unpaid balance. Based on defendant's failure to disclose a limitation on an after-acquired security interest, the trial court held the disclosure inadequate and awarded plaintiff the statutory penalty of $944.76 and $700.00 in attorney's fees. Although in the instant case defendant does not appeal the adverse judgment on the truth-in-lending violation, a similar judgment favorable to a plaintiff borrower on the same kind of violation is affirmed in the companion case of *Carr v. Blazer Financial Services, Inc., supra.*

The trial court, however, offset the plaintiff's award and the attorney's fee award against the judgment for defendant on the counterclaim. From this judgment and setoff, plaintiff appeals on three issues: (1) the jurisdiction of the court to entertain the counterclaim, (2) defenses to the counterclaim under Georgia law, and (3) the offset of attorney's fees.

## I. *Counterclaim*

Plaintiff challenges the trial court's ruling that defendant's counterclaim on the underlying debt was compulsory.[2] The issue is jurisdictional. A permissive counterclaim must have an independent jurisdictional basis, *Diamond v. Terminal Ry. Alabama State Docks*, 421 F.2d 228 (5th Cir. 1970), while it is generally accepted that a compulsory counterclaim falls within the ancillary jurisdiction of the federal courts even if it would ordinarily be a matter for state court consideration. *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974); *Revere Copper & Brass, Inc. v. Aetna Casualty & Surety Co.*, 426 F.2d 709 (5th Cir. 1970). In the instant case there is no independent

---

1. 15 U.S.C.A. § 1640(a) provides:

 **§ 1640. Civil liability—Failure to disclose**
 (a) Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to that person is liable to that person in an amount equal to the sum of
 (1) twice the amount of the finance charge in connection with the transaction, except that the liability under this paragraph shall not be less than $100 nor greater than $1,000; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court.

2. The ruling of the district court was based on the *en banc* decision of the United States District Court for the Northern District of Georgia in *Mims v. Dixie Finance Corp.*, 426 F.Supp. 627 (N.D.Ga.1976), overruling *Roberts v. National School of Radio & Television Broadcasting*, 374 F.Supp. 1266 (N.D.Ga.1974).

basis since neither federal question nor diversity jurisdiction is available for the counterclaim. Consequently, if the counterclaim were to be treated as permissive, defendant's action on the underlying debt would have to be pursued in the state court.[3]

The issue of whether a state debt counterclaim in a truth-in-lending action is compulsory or permissive is one of first impression in this Circuit, has never, to our knowledge, been decided by a court of appeals, and has received diverse treatment from a great number of district courts.

Two cases decided by different panels of this Court contain dicta which address this issue but are not controlling. The cases were related and arose in a procedural setting opposite from this action, that is, a truth-in-lending counterclaim was asserted in an action on the debt.

In the first decision, *Spartan Grain & Mill Co. v. Ayers*, 517 F.2d 214, 220 (5th Cir. 1975), the Court determined the trial court should have allowed defendants to amend pleadings under Rule 13(f), Fed.R.Civ.P., which, because of their compulsory nature, could be met with a plea of res judicata in a later suit.[4] *See Aycock v. Household Finance Corp. of Ga.*, 142 Ga.App. 207, 235 S.E.2d 578 (1977). It has been suggested that this dictum is ambiguous, however, because while the court speaks of counterclaim in the singular, there were actually two counterclaims in the case and the other, based on Georgia usury statutes, was clearly compulsory. *Meadows v. Charlie Wood, Inc.*, 448 F.Supp. 717, 722 (M.D.Ga.1978).

In the second case, *Spartan Grain & Mill Co. v. Ayers*, 581 F.2d 419 (5th Cir. 1978), the district court had held that the truth-in-lending counterclaim was barred by the one-year statute of limitations. 15 U.S.C.A. § 1640(e). The debtor argued on appeal that the statute of limitations was tolled by the filing of the original complaint on the underlying debt because the counterclaim was compulsory. 581 F.2d at 429–430. The Court observed that the district court had applied the one-year limitations period from the time the contract was made to bar the counterclaim but noted that even if the year was measured from the last sale under the contract within which time the complaint was filed, the counterclaim was better considered permissive. 581 F.2d at 430.

Rule 13(a), Fed.R.Civ.P., provides that a counterclaim is compulsory if it "arises out of the transaction or occurrence" that is the subject matter of plaintiff's claim.[5] Four tests have been suggested to further define when a claim and counterclaim arise from the same transaction:

1) Are the issues of fact and law raised by the claim and counterclaim largely the same?

2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?

3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?

4) Is there any logical relation between the claim and the counterclaim?

6 Wright & Miller, Federal Practice and Procedure § 1410 at 42 (1971). An affirma-

---

**3.** It should be noted that only a debt in default is involved. No counterclaim could be brought on a debt not currently due.

**4.** The Court was not considering the nature of the counterclaim in a jurisdictional context because, of course, independent federal question jurisdiction would have supported even a permissive truth-in-lending counterclaim.

**5.** Fed.R.Civ.P. 13(a) provides:

*Compulsory Counterclaims.* A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of

the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

tive answer to any of the four questions indicates the counterclaim is compulsory. *Id.* at 43.

The test which has commended itself to most courts, including our own, is the logical relation test. *Revere Copper & Brass, Inc. v. Aetna Casualty & Surety Co.,* 426 F.2d at 714; 6 Wright & Miller at 48. The logical relation test is a loose standard which permits "a broad realistic interpretation in the interest of avoiding a multiplicity of suits." 3 Moore's Federal Practice ¶ 13.13 at 300. "The hallmark of this approach is its flexibility." 6 Wright & Miller at 46–47.

In *Revere Copper & Brass* this Court added a third tier to the counterclaim analysis by further defining "logical relationship" to exist when the counterclaim arises from the same "aggregate of operative facts" in that the same operative facts serves as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant. 426 F.2d at 715.

Applying the logical relationship test literally to the counterclaim in this case clearly suggests its compulsory character because a single aggregate of operative facts, the loan transaction, gave rise to both plaintiff's and defendant's claim. Because a tallying of the results from the district courts which have decided this question, however, shows that a greater number have found such a counterclaim merely permissive, we subject the relationship between the claims to further analysis.

The split of opinion on the nature of debt counterclaims in truth-in-lending actions appears to be, in large part, the product of competing policy considerations between the objectives of Rule 13(a) and the policies of the Truth-in-Lending Act, and disagreement over the extent to which federal courts should be involved in state causes of action for debt. While Rule 13(a) is intended to avoid multiple litigation by consolidating all controversies between the parties, several courts and commentators have observed that accepting creditors' debt counterclaims may obstruct achievement of the goals of the Truth-in-Lending Act.[6]

Various arguments are made compositely as follows: The purpose of the Act is

> to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.

15 U.S.C.A. § 1601. This purpose is effectuated by debtors' standing in the role of private attorneys general not merely to redress individual injuries but to enforce federal policy. The success of this private enforcement scheme would be undermined if debtors were faced with counterclaims on debts often exceeding the limits of their potential recovery under the Act. *See Hooks v. Jefferson Chevrolet Co.,* CCH Consumer Credit Guide ¶ 98,152 (E.D.Mich. 1977); *Ball v. Connecticut Bank & Trust Co.,* 404 F.Supp. 1 (D.Conn.1975). The purpose of the Act would suffer further frustration if federal courts were entangled in the myriad factual and legal questions essential to a decision on the debt claims but unrelated to the truth-in-lending violation. *Agostine v. Sidcon Corp.,* 69 F.R.D. 437 (E.D.Pa.1975). In *Roberts v. National School of Radio & Television Broadcasting,* 374 F.Supp. 1266 (N.D.Ga.1974), the court also noted the incongruity of enlisting the federal court's resources to assist in debt

---

**6.** A thorough treatment of the underlying policies of the Truth-in-Lending Act is found, along with a strong argument for treating such counterclaims as permissive, in Note, *Truth-in-Lending Act—Defendant's Debt Counterclaim—Compulsory or Permissive?*, 28 Case Western Reserve L.Rev. 434 (1978). The enormity of the threat to the Act's objectives perceived by the author as posed by debt counterclaims should be reduced by recognition that such counterclaims may be brought only where truth-in-lending plaintiffs have defaulted on their debt obligations and of the ease with which debt counterclaims can normally be proved.

collection by the very target of the legislation which gives the plaintiff its cause of action.[7]

Several other factors have been cited to offset the attractiveness of treating all related disputes in a single action under Rule 13. For example, courts have predicted a flood of debt counterclaims, greatly increasing the federal court workload. *See, e. g., Gammons v. Domestic Loans of Winston-Salem, Inc.,* 423 F.Supp. 819 (M.D.N.C. 1976). Furthermore, permitting debt counterclaims might destroy truth-in-lending class actions by interjecting vast numbers of individual questions.[8] *Jones v. Goodyear Tire & Rubber Co.,* 73 F.R.D. 577 (E.D.La. 1976). The judicial economy of consolidated litigation might be countered by the delay of having to provide a jury trial for the debt claim though none is available to the truth-in-lending plaintiff. *Id.* at 580; *Meadows v. Charlie Wood, Inc.,* 448 F.Supp.

at 722.[9] Other courts have suggested that regarding such debt counterclaims as compulsory would infringe on the power of states to adjudicate disputes grounded in state law. *See, e. g., Zeltzer v. Carte Blanche Corp.,* 414 F.Supp. 1221 (W.D.Pa. 1976); *Daughtrey v. First Bank & Trust Co. of South Bend,* 435 F.Supp. 218 (N.D.Ind. 1977).

Courts which have concluded debt counterclaims to be permissive have found the nexus between the truth-in-lending violation and debt obligation too abstract or tenuous to regard the claims as logically related. One claim, they reason, involves the violation of federal law designed to deter lender nondisclosure and facilitate credit shopping and the other concerns merely a default on a private duty. *See, e. g., Ball v. Connecticut Bank & Trust Co.,* 404 F.Supp. at 4; *Jones v. Sonny Gerber*

---

7. The general remedial policies of the Act have also been considered in several different procedural context. For example, in *Grey v. European Health Spas, Inc.,* 428 F.Supp. 841 (D.Conn. 1977), the court rejected the creditor's argument that the court should defer a truth-in-lending recovery until it determined whether the debtor had stopped paying on its debt in order to offset its potential truth-in-lending recovery against its outstanding debt contrary to 15 U.S.C.A. § 1640(h). The court refused to withhold summary judgment, observing that to examine the underlying debt and whether plaintiff was trying to offset it would conflict with the policy of creating a truth-in-lending damage claim entirely separate from the debt. When the plaintiff chooses a federal forum, the court continued, the defendant may not by counterclaim turn it into a debtor-creditor court. 428 F.Supp. at 847–48.

In *Drew v. Flagship First National Bank of Titusville,* 448 F.Supp. 434 (M.D.Fla.1977), the court rejected the defendant creditor's assertion that the debtor should have brought its truth-in-lending claim as a compulsory counterclaim in an earlier state debt action. The court concluded the truth-in-lending claim was not compulsory and that the debtors private attorney general enforcement rights had been conferred independent of state law liability on the underlying obligation.

8. While concern about the ramifications of our decision on class action cases is premature since that issue is not properly before this

Court, we note that a number of cases have considered the complications posed by debt counterclaims against individual class members. *See, e. g., Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161 (7th Cir. 1974); *George v. Beneficial Finance Co. of Dallas,* 81 F.R.D. 4 (N.D.Tex.1977); *Fetta v. Sears, Roebuck & Co.,* 77 F.R.D. 411 (D.R.I.1977); *Carter v. Public Fin. Corp.,* 73 F.R.D. 488 (N.D.Ala. 1977); *Parr v. Thorp Credit, Inc.,* 73 F.R.D. 127 (S.D.Iowa 1977); *Bantolina v. Aloha Motors, Inc.,* 419 F.Supp. 1116 (D.Haw.1976); *Zeltzer v. Carte Blanche Corp.,* 414 F.Supp. 1221, 1223 n.4 (W.D.Pa.1976); *Berkman v. Sinclair Oil Corp.,* 59 F.R.D. 602 (N.D.Ill.1973); *Rodriguez v. Family Publications Service, Inc.,* 57 F.R.D. 189 (C.D.Cal.1972).

It has been suggested that where debt counterclaims were asserted against class members, the court would exclude those members from the proposed class in order to preserve commonality of questions of law and fact. *See, e. g., Rollins v. Sears, Roebuck & Co.,* 71 F.R.D. 540 (E.D.La.1976). *Cf. Partain v. First National Bank of Montgomery,* 59 F.R.D. 56 (M.D.Ala. 1973) (action under National Bank Act with counterclaims on credit card accounts). *But see George v. Beneficial Fin. Co. of Dallas,* 81 F.R.D. 4, 7 (N.D.Tex.1977).

9. This concern overlooks the fact that the vast majority of debt actions pose issues of fact and are handled on summary judgment.

*Auto Sales, Inc.*, 71 F.R.D. 695 (D.Neb. 1976).[10]

After careful consideration of the factors relied upon in these cases to find counterclaims permissive, we opt for the analysis applied by district courts in Louisiana, Alabama, Texas and Georgia in determining debt counterclaims to be compulsory.[11]

In *Rollins v. Sears, Roebuck & Co.*, 71 F.R.D. 540 (E.D.La.1976), the court found the claim and counterclaim logically related because both concerned plaintiff's purchase of a washer and dryer from defendant. In response to the argument that federal courts should avoid state law controversies the court observed that diversity jurisdiction presumes federal courts' competence to decide state law issues and that no rule against state law counterclaims exists for other federal causes of action which may give rise to such counterclaims.[12] 71 F.R.D. at 543.

In *Carter v. Public Finance Corp.*, 73 F.R.D. 488 (N.D.Ala.1977), the court concluded that both claims arose from a single loan transaction and that other than proof of default necessary to prove the counterclaim, the evidence in each would overlap. The court rejected the four suggested tests and held that the single transaction of Rule 13(a) encompassed the loan and everything necessarily done in connection with its closing.

The results reached in *Carter* were found "inescapable" in *George v. Beneficial Finance Co. of Dallas*, 81 F.R.D. 4 (N.D.Tex. 1977). Emphasizing the goal of judicial economy furthered by a single presentation of facts, the court observed that "suits on notes will inevitably deal with the circumstance of the execution of the notes and any representation made to 'induce' the borrowing." 81 F.R.D. at 6.

Finally, in *Mims v. Dixie Finance Corp.*, 426 F.Supp. 627 (N.D.Ga.1976), the District

---

**10.** The following cases also held a debt counterclaim permissive: *Perry v. Beneficial Fin. Co. of N. Y.*, 81 F.R.D. 490, 493 (W.D.N.Y. 1979); *Jacklitch v. Redstone Fed. Credit Union*, 463 F.Supp. 1134, 1136 (N.D.Ala.1979); *Rounds v. Community National Bank in Monmouth*, 454 F.Supp. 883, 890 (S.D.Ill.1978); *Fetta v. Sears, Roebuck & Co.*, 77 F.R.D. 411, 414 (D.R.I.1977); *Stone v. Ford Motor Co.*, CCH Consumer Credit Guide ¶ 98,157 (W.D.Ky. 1977); *Parr v. Thorp Credit, Inc.*, 73 F.R.D. 127, 129 (S.D.Iowa 1977); *Bantolina v. Aloha Motors, Inc.*, 419 F.Supp. 1116, 1122 (D.Haw. 1976); *Bloomer v. Household Consumer Discount Co.*, 21 Fed.Rules Serv.2d, p. 1256 (W.D. Pa.1976); *Shriver v. Sears, Roebuck & Co.*, 22 Fed.Rules Serv.2d, p. 36 (W.D.Pa.1976); *Buehler v. Citizens Fidelity Bank & Trust Co.*, 22 Fed.Rules Serv.2d, p. 37 (W.D.Ky.1976).

**11.** Other cases which have indicated debt counterclaims would receive compulsory consideration are: *Palmer v. Wilson*, 502 F.2d 860, 863 (9th Cir. 1974) (Thompson, J., concurring); *Gantt v. Commonwealth Loan Co.*, 416 F.Supp. 309 (E.D.Mo.1976), aff'd, 573 F.2d 520 (8th Cir. 1978); *Gibson v. Family Fin. Corp. of Gentilly, Inc.*, 404 F.Supp. 896, 899 (E.D.La.1975); *Kenney v. Landis Financial Group, Inc.*, 376 F.Supp. 852, 854 (N.D.Iowa 1974); *Rodriguez v. Family Publications Service, Inc.*, 57 F.R.D. 189, 193 (C.D.Cal.1972). *Cf. Berkman v. Sinclair Oil Corp.*, 59 F.R.D. 602, 609 (N.D.Ill. 1973).

**12.** *See, e. g., Mayer Paving & Asphalt Co. v. General Dynamics Corp.*, 486 F.2d 763 (7th Cir. 1973), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 899, 39 L.Ed.2d 102 (1974) (in suit against quarry for price discrimination in violation of Robinson-Patman Act, counterclaim for foreclosure of mortgage and balance due on promissory note and open account for unpaid stone was compulsory); *City of Cleveland v. Cleveland Elec. Illuminating Co.*, 570 F.2d 123 (6th Cir. 1978) (in city's antitrust action, defendant's counterclaim for the price of power supplied was compulsory); *Cotchett v. Avis Rent A Car System, Inc.*, 56 F.R.D. 549 (S.D.N.Y.1972) (in antitrust suit for overcharge in auto rental, counterclaim for unpaid parking tickets, uninsured damages to cars and unpaid rental bills compulsory). *See also Fox Chemical Co. v. Amsoil, Inc.*, 445 F.Supp. 1355 (D.Minn.1978); *United States v. Gerbus Bros. Constr. Co.*, 57 F.R.D. 206 (E.D.Ky.1972). *Contra, Herrmann v. Atlantic Richfield Co.*, 72 F.R.D. 182 (W.D. Pa.1976) (in antitrust suit, debt counterclaim held permissive); *Jones v. United States Dep't of Hous. & Urban Dev.*, 68 F.R.D. 60 (E.D.La. 1975) (in action for equitable relief and damages to prevent demolition of buildings and plaintiffs' eviction, counterclaim for back rent permissive).

Court for the Northern District of Georgia, where the present claim was litigated, sat *en banc* to conclude a debt counterclaim should be compulsory, overruling *Roberts v. National School of Radio & Television Broadcasting, supra,* which had held such counterclaims permissive. The Special Master's Recommendation approved and adopted by the court made two further arguments for a conclusion of compulsory character. It noted first that the federal judiciary should not reallocate litigation burdens for public policy reasons without legislative guidance. Furthermore, the Special Master added, the resolution of the state law issues imposes little burden in fact because a judge determining the truth-in-lending claim must be well versed in state consumer credit transaction law and the only additional finding to be made in connection with the counterclaim is how much the plaintiff has paid. 426 F.Supp. at 630.

■ We add to these arguments the observation that one of the purposes of the compulsory counterclaim rule is to provide complete relief to the defendant who has been brought involuntarily into the federal court. *See Revere Copper & Brass, Inc. v. Aetna Casualty & Surety Co.,* 426 F.2d at 715. Absent the opportunity to bring a counterclaim, this party could be forced to satisfy the debtor's truth-in-lending claim without any assurance that his claims against the defaulting debtor arising from the same transaction will be taken into account or even that the funds he has been required to pay will still be available should he obtain a state court judgment in excess of the judgment on the truth-in-lending claim. In addition, a determination that the underlying debt was invalid may have a material effect on the amount of damages a debtor could recover on a truth-in-lending claim.

To permit the debtor to recover from the creditor without taking the original loan into account would be a serious departure from the evenhanded treatment afforded both parties under the Act. Truth-in-lending claims can be brought in either state or federal court. To the extent this dual jurisdiction was intended to permit litigation of truth-in-lending claims in actions on the debt, it reflects a purpose that the debt claim and the truth-in-lending claims be handled together. To the extent it was intended to relieve federal courts of any of this litigation, the purpose would be frustrated by providing a sanctuary from the creditor's claims in one jurisdiction but not in the other. State courts would always have jurisdiction of a creditor's counterclaim. Had Congress intended to insulate recovery in truth-in-lending actions in federal court from the counterclaims of creditors, of which it surely was aware, it could have easily done so.

We conclude that the obvious interrelationship of the claims and rights of the parties, coupled with the common factual basis of the claims, demonstrates a logical relationship between the claim and counterclaim under the test of *Revere Copper & Brass.*[13] We affirm the trial court's determination that the debt counterclaim is compulsory.

**13.** State courts, which share jurisdiction over truth-in-lending actions, have considered the nexus between such claims in the opposite procedural posture. Where creditors bring actions on the debt, state courts have split on the question of whether the debtor may assert a truth-in-lending counterclaim otherwise barred by the Act's one-year statute of limitations. 15 U.S.C.A. § 1640(e). Where the counterclaim can be regarded as arising from the same transaction as the claim, courts have permitted the counterclaim as a "recoupment" or "setoff" without regard to the statute of limitations. *See generally,* Comment, *Truth-in-Lending and* the Statute of Limitations, 21 Villanova L.Rev. 904 (1975); 20 Am.Jur.2d, Counterclaim, Recoupment and Setoff §§ 1–73 (1965). The similarity between the requirements for recoupment and those for Rule 13(a) compulsory counterclaims has been noted. *See* Comment, 21 Villanova L.Rev. at 917 n.72; *Household Fin. Corp. v. Hobbs,* 387 A.2d 198, 199 (Del.Super.Ct.1978).

Cases which have found the truth-in-lending counterclaim to arise from the same transaction for recoupment or setoff purposes include: *Household Fin. Corp. v. Hobbs,* 387 A.2d 198 (Del.Super.Ct.1978); *Bankers Guar. Corp. v.*

## II. *Setoff of Attorney's Fees*

Plaintiff challenges the trial court's order that attorney's fees be included in the setoff against the amount owed defendant.

15 U.S.C.A. § 1640 provides for attorney's fees as follows:

(a) Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to that person is liable to that person in an amount equal to the sum of

.  .  .  .  .

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court.[14]

Neither the language nor the legislative history of the statute providing for the award of attorney's fees sheds any light on whether these fees are subject to setoff. Nor have we found any authoritative judicial interpretation of this provision from this Circuit or any other. *Cf. In re Garner*, 556 F.2d 772 (5th Cir. 1977) (Court affirmed a bankruptcy judge's order excluding attorney's fees from setoff against a damage award without discussing the issue). The question is, therefore, one of first impression.

■ We hold that in a truth-in-lending action an award of attorney's fees is not subject to setoff against the debtor's outstanding debt to the creditor. No discretion is available to the trial court in this matter and the attorney is entitled to the fee that is awarded him regardless of any controversy regarding the underlying debt.

This conclusion is based upon careful consideration of the purpose of the Truth-in-Lending Act. The truth-in-lending legislation was enacted to assure debtors of accurate and uniform disclosure of the material features of credit obligations. An important enforcement mechanism of the Act is the provision in 15 U.S.C.A. § 1640 making available double civil damages with a maximum ceiling of $1,000.00. As a practical matter, the award of attorney's fees is a critical and integral part of this section. Because of the small amounts involved, many potential truth-in-lending plaintiffs are either unable to afford an attorney or unable to justify the expense of an attor-

---

*Powell*, CCH Consumer Credit Guide ⸢ 98,176 (D.C.Super.Ct.1977); *Husband v. Blazer Financial Services, Inc.*, CCH Consumer Credit Guide ¶ 97,899 (Fla.Cir.Ct.1978); *Streets v. M.G.I.C. Mortgage Corp.*, 378 N.E.2d 915 (Ind.Ct.App. 1978); *Wood Acceptance Co. v. King*, 18 Ill. App.3d 149, 309 N.E.2d 403 (1974); *Reliable Credit Serv., Inc. v. Bernard*, 339 So.2d 952 (La.Ct. of App.1976); *St. John's Bangor Federal Credit Union v. Pelkey*, CCH Consumer Credit Guide ¶ 98,261 (Me.Super.Ct.1977); *General Fin. Corp. v. Martin*, CCH Consumer Credit Guide ¶ 98,360 (Mich.Dist.Ct.1976); *Collectors, Inc. v. The Atrisca Ass'n*, CCH Consumer Credit Guide ¶ 98,779 (N.M.Dist.Ct. 1974); *Empire Fin. Co. of Louisville, Inc. v. Ewing*, CCH Consumer Credit Guide ⸢ 98,124 (N.Y.1972); *Public Loan Co., Inc. v. Hyde*, 63 A.D.2d 193, 406 N.Y.S.2d 907 (App.Div.1978); *Lincoln First Bank of Rochester v. Rupert*, CCH Consumer Credit Guide ¶ 98,058 (N.Y.App.Div. 1977); *Carriers Employees Fed. Credit Union v. McCullough*, CCH Consumer Credit Guide ¶ 97,874 (N.Y.City Ct.1977); *Akron Nat'l Bank & Trust Co. v. Roundtree*, CCH Consumer Credit Guide ¶ 97,821 (Oh.Ct.App.1978); *Na-*

*tional City Bank Installment Loan v. Gutschow*, CCH Consumer Credit Guide ¶ 97,794 (Oh.Ct. App.1978); *Garza v. Allied. Fin. Co.*, 566 S.W.2d 57 (Tex.Ct.Civ.App.1978). *See also Reliable Fin. Corp. v. Iacona*, CCH Consumer Credit Guide ⸢ 97,953 (D.R.I.1977). *Contra, Hewlett v. John Blue Employees Fed. Credit Union*, 344 So.2d 505 (Ala.Civ.App.1976); *Hodges v. Community Loan & Inv. Corp. of North Ga.*, 133 Ga.App. 336, 210 S.E.2d 826 (1974), *rev'd in part on other grounds*, 234 Ga. 427, 216 S.E.2d 274 (1975); *Beneficial Fin. Co. of Atlantic City v. Swaggerty*, CCH Consumer Credit Guide ⸢ 97,958 (N.J. Atlantic County Ct. 1978); *Lincoln First Bank of Rochester v. Sielawa*, 91 Misc.2d 778, 398 N.Y.S.2d 654 (N.Y. City Ct.1977); *Shannon v. Carter*, 282 Or. 449, 579 P.2d 1288 (1978); *Household Consumer Discount Co. v. Vespaziani*, 255 Pa.Super. 367, 387 A.2d 93 (1978).

**14.** Subsequently 15 U.S.C.A. § 1640(a) was amended. The amendments do not have any bearing upon the provision of attorney's fees.

ney. Allowance of attorney's fees in a successful action makes legal representation available in a manner analogous to the contingent fee system.

Were the attorney's fee award subject to setoff, the expectation of fees from a successful action might well be limited to the resources of the debtor in any case where the outstanding debt, being in default and subject to counterclaim, exceeded the recovery. To allow a setoff would in effect relieve the creditors in violation of the Act of the attorney's fee expense in the case of an insolvent debtor. Such a result would thwart the statute's individual enforcement scheme and its remedial objectives.

In support of the trial court's order, defendant argues that the statute mandates a personal award to the plaintiff and not to his attorney and points to analogous provisions for attorney's fees in other statutory schemes. Defendant relies upon the literal language of 15 U.S.C.A. § 1640(a) which provides for liability for amounts including attorney's fees "to that person" to whom disclosure was not made. It is suggested that by this language Congress has required that plaintiff be paid directly and therefore this payment is subject to setoff.

Such an approach misstates the issue before the Court, places greater emphasis upon form than substance, and attaches to this phrase an unintended significance. The issue with which the Court is concerned is not whether plaintiff is nominally to receive the money but whether ultimately it is to go to her attorney or to be credited toward defendant in repayment of plaintiff's debt.

We are similarly unpersuaded by defendant's recitation of dicta in *Smith v. South Side Loan Co.*, 567 F.2d 306, 307 (5th Cir. 1978), which speaks of the award of attorney's fees as "the right of the party suing not the attorney representing him." This language must be read in its context, where the attorney was claiming the right to maintain an action for his fees where his client had independently settled the dispute.

*South Side* does not negate the principle that the fee once awarded becomes in effect an asset of the attorney, not the client.

Based on the same underlying rationale, defendant also suggests that an award of fees directly to the attorney creates ethical problems under the canon of legal ethics which prohibits an attorney from having a property interest in the outcome of the litigation. Code of Professional Responsibility, Rule 5-103(A). In this decision we make no comment on the means by which the mechanics of payment are to be worked out. Such a matter is quite properly left to the judgment of the district court. We do suggest that a direct payment to the attorney such as that ordered by the Court in the companion case of *Carr v. Blazer Financial Services, Inc.*, 598 F.2d 1368 (5th Cir. 1979), is no different than authorizing a check in the joint names of attorney and client and raises no ethical issues.

Defendant also cites statutes which contain an attorney's fee provision such as Title VII of the Civil Rights Act, the Fair Labor Standards Act, and the Clayton Act. These statutes and the cases interpreting them appear to regard the attorney's fees as the property of the plaintiff. None of the cases, however, addresses the problem of setoff. Indeed, a question of setoff rarely arises because there rarely exists a counterclaim for an outstanding debt. These acts, then, are of little aid in interpreting the Truth-in-Lending Act problem.

### III. *Plaintiff's Defenses to the Counterclaim*

Plaintiff raises two defenses to the counterclaim, arguing that the note was null and void under the Georgia Industrial Loan Act. The district court adopted the findings of the Special Master that the note was valid and granted judgment on the counterclaim. We agree.

First, plaintiff contends the note fails to provide for a rebate of unearned interest, thereby rendering the agreement

void. She recites a clause in the note which states:

> Should any party to the note fail in business or become bankrupt, or should have an action filed against him, or any proceedings for the appointment of a Receiver, this note shall immediately become due and payable, at the option of the holder.

Plaintiff argues that the right to accelerate "this note" purported to enable defendant to accelerate the full amount of unpaid installments which, under Georgia law, included both interest and principal. A contract for unearned interest upon acceleration violates the Georgia Industrial Loan Act. *Lawrimore v. Sun Finance Co.*, 131 Ga.App. 96, 205 S.E.2d 110, *aff'd*, 232 Ga. 637, 208 S.E.2d 454 (1974); *Hardy v. G.A.C. Finance Co.*, 131 Ga.App. 282, 205 S.E.2d 526, *aff'd*, 232 Ga. 632, 208 S.E.2d 453 (1974). Any contract violative of the Act is "null and void." Ga.Code Ann. § 25–9903.[15] *Hodges v. Community Loan & Investment Corp.*, 234 Ga. 427, 216 S.E.2d 274 (1975).

In the *Lawrimore* line of cases relied on by plaintiff, however, the contractual language unambiguously indicates that the amount to be paid upon acceleration includes unearned interest. For example, the security agreement in *In re Sprouse*, 577 F.2d 989 (5th Cir. 1978) (applying Georgia law), referred to "all the installments" of the note which included unearned interest. We held that contract void under the Georgia Act.

■ By contrast, in the instant case the term "note" in the insolvency clause does not clearly provide for unearned interest.

In such a situation the documents must be considered as a whole. A preceding acceleration clause in the note correctly provides that

> A default in the making of any payment or part thereof shall at the option of the Creditor render the entire unpaid balance, less unearned interest and charges, due and payable and acceptance of payment after default shall not constitute a waiver of such default.

Plaintiff argues that this clause cannot be relied upon in interpreting the challenged clause because it treats only acceleration caused by nonpayment. Even if such a distinction were warranted, the disclosure statement contains a clause applicable to all acceleration clauses which specifies that unearned interest is not included. Added by typewriter and initialed by plaintiff, it states:

METHOD OF REBATE ON ACCELERATION IS PRO RATA.

Considering the disfavor with which forfeitures are met, we conclude that the note as a whole, together with the disclosure statement, does not contract for unearned interest. *See Freeman v. Decatur Loan & Finance Corp.*, 140 Ga.App. 682, 231 S.E.2d 409 (1976); *Customers Loan Corp. v. Jones*, 100 Ga.App. 653, 112 S.E.2d 362 (1959).

Second, plaintiff challenges the validity of the note because of two blank spaces in the upper right had corner of the note entitled "amount of note" and "amount of property insurance." Although failure to fill in these spaces does not constitute a violation of the Industrial Loan Act, it does violate state regulations promulgated pur-

---

15. Ga.Code Ann. § 25–9903 provides:

**Penalty for violation of Industrial Loan Act**

(a) Any person who shall make loans under the provisions of Chapter 25–3 without first obtaining a license or who shall make a false statement under oath in an application for a license hereunder, or who shall do business while the license of such person under Chapter 25–3 is finally suspended or revoked, or who shall knowingly charge, contract for, receive and collect charges in excess of those permitted by Chapter 25–3 shall be punished as for a misdemeanor. Any loan contract made in violation of Chapter 25–3 shall be null and void: Provided, however, there shall be no forfeiture of the principal amount of the loan contract if the lender shows by a preponderance of the evidence that the violation is the result of a bona fide clerical or typographical error.

suant to Ga.Code Ann. § 25–306(a) which prohibits blank spaces.[16]

■ The regulations provide that violations shall be punished under Chapter 25–3 of the Georgia Code. This section empowers the Commissioner only to sue and punish violations. Illegal loan agreements are rendered null and void not in Chapter 25–3 but in Chapter 25–99. Therefore the district court correctly held that violation of these regulations does not render the agreement void and properly entered judgment for defendant on the counterclaim.

The judgment of the district court is affirmed, except that the ruling of the district court setting off the attorney's fees against the counterclaim is reversed and remanded for an order not inconsistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

VANCE, Circuit Judge, dissenting in part and concurring in part.

The majority opinion contains a fair statement of the issue whether defendant's counterclaim is compulsory or permissive. I do not agree, however, that the pertinent portion of our opinion in *Spartan Grain & Mill Co. v. Ayers*, 581 F.2d 419 (5th Cir. 1978), is dictum. In any case I am of the view that it correctly held such counterclaims to be permissive. I therefore dissent from the majority's contrary holding.

In all other respects, I concur in the majority opinion.

---

16. Regulation 120–1–14–.09 provides:

    *Prohibition of Blank Agreements.* Every agreement evidencing a consumer credit transaction shall be completed as to all essential provisions prior to the signing thereof by the parties. No creditor shall induce, encourage or otherwise permit the consumer to sign an agreement containing blank spaces. Blank spaces inapplicable to a transaction must be completed in a manner which reveals their inapplicability.

Regulation 120–1–10–.03(4) provides:

The licensee shall fill in all spaces on every document which the borrower is required to sign in obtaining a loan prior to the borrower affixing his signature thereto.

Rule 120–1–14–.09 provides:

Any person who fails to comply with the requirements of this Regulation shall be subject to such penalties as may be appropriate under Chapter 25–3 of the Georgia Code Annotated and the Rules and Regulations promulgated hereunder.