STATE BANK & TRUST COMPANY OF GOLDEN MEADOW

v.

BOAT "D.J. GRIFFIN", Its Engines, Tackle, Apparel, etc., BOAT "JOEY G", Its Engines, Tackle, Apparel, etc., In rem, Derris Griffin Boat Operators, Inc., In personam.

Civ. A. No. 84–3383.

United States District Court, E.D. Louisiana.

Feb. 15, 1990.

Patricia D. Tunmer and Robert E. Barkley, Jr., Sessions, Fishman, Boisfontaine, Nathan, Winn, Butler & Barkley, New Orleans, La., and John David Ziober, Shockey & Ziober, Baton Rouge, La., for plaintiff.

Lloyd N. Shields and Susan Tart, Simon, Peragine, Smith & Redfearn, New Orleans, La., for defendant and plaintiff-in-counterclaim Derris Griffin Boat Operators, Inc.

## ORDER AND REASONS

MENTZ, District Judge.

Before the Court is the motion of plaintiff and defendant in counterclaim, State Bank & Trust Company of Golden Meadow ("State Bank"), to dismiss, or alternatively to grant summary judgment dismissing, all of the counterclaims asserted against it by or on behalf of Derris Griffin Boat Operators, Inc. ("Boat Operators"). The Court, after reviewing the motion, memoranda of counsel, the record, and the law, hereby grants the motion in part and denies the motion in part for the reasons set forth below.

## BACKGROUND

State Bank originally brought suit *in rem* against two vessels, the "D.J. GRIFFIN" and the "JOEY G", to foreclose on preferred maritime mortgages securing a promissory note held by the State Bank. The bank also sued Derris Griffin Boat Operators, Inc., the endorser of the note and the owner of the vessels, *in personam*. The vessels were seized on August 17, 1984 and sold by the United States Marshal on October 15, 1984. The proceeds of the sale remain in the registry of the Court. On

October 17, 1984, Boat Operators filed an answer to the Complaint.

On March 4, 1985, Boat Operators filed an amended answer to the Complaint which asserted counterclaims by Mrs. Elta Griffin, derivatively for the benefit of and on behalf of Boat Operators, pursuant to Federal Rules of Civil Procedure 13 and 23.1. Mrs. Griffin is a member of the board of directors of Boat Operators. Subsequent to the loan transaction in question and the vessel seizures, the Griffins separated and later divorced. The amended answer alleged four counterclaims against the bank:

1. Wrongful seizure of the vessels;

2. Payment by State Bank of a check on an unauthorized and/or forged endorsement;

3. Wrongful lending of money; and

4. Unjust enrichment.

Boat Operators based the Court's jurisdiction over its counterclaims on the following:

Jurisdiction of this court is proper by virtue of plaintiff's execution of an admiralty claim under Federal Rule of Civil Procedure 9(h), and 28 U.S.C. § 1333. Moreover, jurisdiction over this counterclaim is proper by virtue of original plaintiff having filed a Complaint herein under Federal Rule of Civil Procedure 9(h) and by virtue of this compulsory counterclaim for wrongful seizure of vessels. Finally, pendent and ancillary jurisdiction exists for all state law claims.

Amended Answer and Original Counterclaim, p. 4.

Boat Operators therefore purported to base jurisdiction over the wrongful seizure counterclaim on Federal Rule of Civil Procedure 13(a), as a compulsory counterclaim. Additionally, Boat Operators claimed to base jurisdiction over the other state law counterclaims on the doctrine of pendent and/or ancillary jurisdiction.

On July 10, 1989, Boat Operators filed a Second Amended Answer and Amended Counterclaim, which amended counterclaims by naming Boat Operators as the plaintiff in counterclaim and by adding the following lender liability claims against the bank:

1. State Bank's activities during 1981 and 1982 created a fiduciary duty to Mr. Derris Griffin, Boat Operators, and two other Griffin corporations, Derris Griffin Boat Rentals, Inc. ("Boat Rentals") and Big 3 Marine, Inc. ("Big 3"), which were breached by State Bank through its complete domination and control of those entities.

2. State Bank breached an implied obligation of good faith to Big 3 by arbitrarily refusing to lend additional funds for four crewboats, the construction of which it had financed.

3. State Bank breached its obligation to deal fairly and in good faith with Boat Operators, Big 3, and Boat Rentals.

4. State Bank misrepresented and suppressed the truth in its dealings with Boat Rentals and Big 3, with the intention of obtaining an unjust advantage over Boat Operators.

Boat Operators asserted subject matter jurisdiction over the wrongful seizure counterclaim pursuant to Federal Rule of Civil Procedure 13(a) as compulsory, or alternatively, under Rule 13(b) as permissive. It asserted jurisdiction over the remaining state law counterclaims on the basis of pendent jurisdiction.

On February 7, 1990, Boat Operators filed a Second Amended Counterclaim that appears to be an attempt to correct a jurisdictional defect and a pleading defect. It also asserts an alternative state law claim.

First, Boat Operators states that if its wrongful seizure claim is construed as a permissive counterclaim under Rule 13(b), jurisdiction is proper by now designating that claim as one in admiralty under Rule 9(h) and 28 U.S.C. § 1333. Second, Boat Operators amends its wrongful seizure claim by adding that such seizure occurred in bad faith and/or with gross negligence on the part of State Bank. Third, Boat Operators states that with respect to State Bank's breach of fiduciary for payment of an unauthorized and/or forged check, alternatively such payment was also a breach of

contract, actual or implied, between Boat Operators and State Bank.

## ANALYSIS

State Bank contends that they initiated suit on a promissory note secured by preferred ship mortgages on two vessels. Simply stated, State Bank argues that this suit involves default on a note and a subsequent foreclosure on two vessels—and that is all. The bank admits to a long-standing financial relationship with Derris Griffin, but asserts that this suit involves one note, one default, and one foreclosure on two vessels. State Bank argues that counterclaims arising out of such a financial relationship do not provide the legal basis necessary for this Court to assert jurisdiction over those counterclaims.

Boat Operators, on the other hand, argues that the nature of the financial relationship, resulting in the complete domination and control of Derris Griffin by State Bank, precipitated all the events leading up to the default and foreclosure in question. Boat Operators asserts that all of its counterclaims arise out of a series of transactions, including the note and foreclosure, that involve a comprehensive scheme on the part of State Bank to use the various Griffin enterprises for unfair advantage.

### Is the Wrongful Seizure Counterclaim Compulsory?

■ As has been noted by this Court in a prior ruling, the parties in this case are not diverse. Therefore, in order for this Court to assert subject matter jurisdiction over a counterclaim for wrongful seizure that claim must be ancillary to the main demand. Otherwise, Boat Operators must assert an independent basis of jurisdiction for the counterclaim. In order to invoke the ancillary jurisdiction of the federal court, the counterclaim must be compulsory. *Young v. City of New Orleans*, 751 F.2d 794, 800 (5th Cir.1985). *See* Fed.R. Civ.P. 13(a).[1] Rule 13(a) dictates when counterclaims are compulsory:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

■ Under the broad test for Rule 13(a) counterclaims adopted by the Fifth Circuit, a counterclaim is compulsory when there is any "logical relationship" between the claim and the counterclaim. *Plant v. Blazer Financial Services, Inc.*, 598 F.2d 1357 (5th Cir.1979). A "logical relationship" exists if "the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendants." *Plant*, 598 F.2d at 1361. Four tests have been suggested to further define when a claim and counterclaim arise from the same transaction or occurrence:

(1) Are the issues of fact and law raised by the claim and counterclaim largely the same?

(2) Would *res judicata* bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?

(3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?

---

1. In the case of *Leather's Best, Inc. v. S. S. Mormaclynx*, 451 F.2d 800 (2nd Cir.1971), cited with approval by the Fifth Circuit in *Titan Navigation, Inc. v. Timsco, Inc.*, 808 F.2d 400, 402 (5th Cir.1987), Judge Friendly explained how Rule 13 applies to counterclaims asserted in admiralty cases after the merger of admiralty and civil jurisdiction:

> Prior to the 1966 merger, there was no rule of compulsory counterclaim, much less a doctrine of ancillary jurisdiction, in the maritime jurisdiction, and permissive cross-libels were limited to claims in admiralty arising out of the same contract or cause of action as the original claim.... With merger, however, Rule 13 became applicable to proceedings brought in the admiralty jurisdiction. *See United States v. M/V Pitcairn*, 272 F.Supp. 518, 519 (E.D.La.1967).... There is no evident reason why the doctrine of ancillary jurisdiction should not now be applicable as well to compulsory counterclaims which arise in the context of suits in admiralty.

*Leather's Best*, 451 F.2d at 810 n. 11.

(4) Is there any logical relation between the claim and the counterclaim?

*Id.* at 1360. *See also Revere Copper & Brass, Inc. v. Aetna Casualty & Surety Co.,* 426 F.2d 709 (5th Cir.1970) (logical relationship exists where the aggregate of operative facts serve as the basis for both the claim and counterclaim).

■ State Bank argues, however, that the Fifth Circuit has held that a claim for wrongful seizure does not lie as a compulsory counterclaim, even under the broad test of "logical relationship." For this proposition, State Bank cites *Incas and Monterey Printing and Packaging, Ltd. v. M/V Sang Jin,* 747 F.2d 958 (5th Cir.1984), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2361, 86 L.Ed.2d 261 (1985):

> Under the broad test for Rule 13(a) adopted by this Circuit, a counterclaim is compulsory when there is any 'logical relationship' between the claim and the counterclaim.... However, even under this liberal standard, it is clear that an action in the nature of wrongful seizure or malicious prosecution does not lie as a compulsory counterclaim under F.R. Civ.P. 13(a).... Such a counterclaim not "arising out of the same transaction or occurrence" as the original action for purposes of federal practice, and there being neither history nor practice in the admiralty suggesting any difference, we see no justification for [requiring counter-security to be posted in] a broader class of counterclaims than that permitted under F.R.Civ.P. 13(a).

*Id.* at 964–65. At first reading, this Fifth Circuit precedent would appear to dispose of whether Boat Operators' wrongful seizure counterclaim is compulsory. How-

ever, in this Court's view, *Incas* is intended to apply *only* in situations where the wrongful seizure counterclaim does not arise out of the "same aggregate of operative facts."

In *Incas,* the plaintiffs made arrangements to have the defendants ship certain cargo to East Africa. Instead, the ship made an unexpected stop in Florida where the cargo was discharged. Plaintiffs later demanded delivery, but defendants refused claiming a lien on the cargo for the expense of discharging it in Florida. The plaintiffs filed a complaint and had the vessel seized for breach of the contract of carriage. The time charterer counterclaimed for wrongful seizure alleging commercial losses and loss to business reputation. On the same day, the time charterer moved that the plaintiffs be required to post counter-security for the counterclaims as provided for in Supplemental Admiralty Rule E(7).[2] The trial court required the plaintiffs to post counter-security, and the Fifth Circuit reversed holding a counterclaim for wrongful seizure is not an appropriate basis for requiring counter-security to be posted under Admiralty Rule E(7). *Id.* at 964.

It is apparent that the *Incas* court viewed the wrongful seizure counterclaim as retaliatory. Claims of commercial losses and loss to business reputation, allegedly resulting from the seizure of the vessel, did not involve the same aggregate of operative facts as the plaintiffs' claim for breach of the contract of carriage. The claim and the counterclaim were not logically related; therefore, the wrongful seizure counterclaim was not compulsory.[3]

**2.** Supplemental Admiralty Rule E(7) provides:

Whenever there is asserted a counterclaim arising out of the same transaction or occurrence with respect to which the action was originally filed, and the defendant or claimant in the original action has given security to respond in damages, any plaintiff for whose benefit such security has been given shall give security in the usual amount and form to respond in damages to the claims set forth in such counterclaim, unless the court, for cause shown, shall otherwise direct; and proceedings on the original claim shall be stayed until

such security is given, unless the court otherwise directs....

**3.** It is this Court's understanding that the *Incas* court simply refused to extend the reading of "logically related" to include retaliatory counterclaims. As the Fifth Circuit stated:

We therefore conclude that, whether or not an action for wrongful seizure, abuse of process or malicious prosecution may be asserted as a counterclaim in admiralty practice, counter-security under Rule E(7) may not be required for such a claim.

*Incas,* 747 F.2d at 965.

In the instant matter, the retaliatory nature of the counterclaim is not present. The vessels that were seized secured the promissory note which is the subject matter of the original suit. One issue raised by Boat Operators is whether Derris Griffin had the authority to enter into the loan transaction in question. That transaction ultimately resulted in the seizure of the Boat Operators vessels. Also, in order for State Bank to obtain a deficiency judgment against Boat Operators *in personam*, it will have to show that Derris Griffin had the authority to sign the Boat Rentals promissory note of December 23, 1982. Additionally, there is a question of whether Derris Griffin could pledge the mortgage notes on the vessels owned by Boat Operators without seeking the consent of the Boat Operators' board of directors. Most importantly, for purposes of whether the claims are related, Boat Operators alleges that State Bank had actual knowledge of all these facts when it entered into the December 23, 1982 loan transaction with Derris Griffin.

Both the suit on the note and the wrongful seizure counterclaim involve the same aggregate of operative facts. The transaction or occurrence is the December 23, 1982 loan transaction. The claim and the counterclaim are logically related because they both involve questions of Derris Griffin's authority to encumber Boat Operators' assets, as well as State Bank's alleged knowledge of that lack of authority. Therefore, under the "logical relationship" test Boat Operators' counterclaim for wrongful seizure is compulsory.

### Is the Wrongful Seizure Counterclaim Permissive?

Given the Court's ruling that the wrongful seizure counterclaim is compulsory, this issue is moot. However, were the counterclaim not compulsory, it would certainly be permissive. A permissive counterclaim must be supported by an independent basis of federal jurisdiction. In this case, there is some question of whether the original counterclaim was one designated under Louisiana law or admiralty. The original counterclaim and the first amended counterclaim do not specify 28 U.S.C. § 1333 or Rule 9(h) as a jurisdictional basis. However, the second amended counterclaim specifically asserts such a jurisdictional basis. Therefore, were the wrongful seizure counterclaim not compulsory, it would be permissive. *See* 1 *Benedict on Admiralty*, § 224 at pp. 14–41, 42 (1974).

State Bank argues that a claim for wrongful seizure is analogous to a claim for abuse of process. Such a counterclaim is not permissive, State Bank states, because it has not matured until the main demand is determined. Therefore, Boat Operators' wrongful seizure counterclaim is premature. As discussed previously, however, the instant matter is *not* analogous to abuse of process or malicious prosecution. The loan transaction of December 23, 1982, the conduct of both State Bank and Derris Griffin resulting from that transaction, and the subsequent seizure of the two vessels are all factually related. The vessels have already been seized and sold, and the funds deposited in the registry of the Court. If Boat Operators has been damaged by the wrongful seizure, as it alleges, that damage has occurred and the claim has matured. Consequently, it would be a waste of judicial resources not to hear and decide these matters together.

### Are the Remaining Counterclaims Ancillary or Pendent?

In addition to the counterclaim for wrongful seizure, Boat Operators has asserted counterclaims for unauthorized and/or forged endorsement of a check, wrongful lending of money, unjust enrichment, breach of fiduciary duty, breach of the duty to deal fairly and in good faith, fraud, and breach of contract. These are all state law claims.

As noted previously, ancillary jurisdiction is cognizable only when the counterclaims arise out of the same aggregate of operative fact, *i.e.* are "logically related" to the main demand. *See Plant*, 598 F.2d at 1360–61. A federal court has the power and the discretion to exercise pendent jurisdiction, on the other hand, when (1) the

face of the complaint (or counterclaim) asserts a federal claim sufficient to confer subject matter jurisdiction on the court, and (2) the appended state law claim arises out of a common nucleus of operative fact. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). *See* 13B C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 3567.1 (1984). Thus, these two concepts are related in the sense that the claims involved must have some common factual nexus. *See* C. Wright, *Law of Federal Courts* § 19 at p. 75–6 and n. 27 (3d ed.1976). They are different because pendent jurisdiction generally refers to resolution of state and federal claims in one action, while ancillary jurisdiction deals with peripheral aspects of a controversy that by themselves would not be cognizable in federal court. *Id.*

■ In the present case, all of the state law claims arise out of the continuing financial relationship between Derris Griffin and State Bank, and not out of the specific transaction which is at issue—the December 23, 1982 loan transaction that resulted in the vessels "JOEY G" and "D.J. GRIFFIN" being seized. Boat Operators states in its memorandum:

All of the remaining counterclaims asserted by Boat Operators are logically related to the wrongful seizure of its vessels in that they are all part and parcel of the overall scheme by State Bank to control Derris Griffin, Boat Operators, Derris Griffin Boat Rental, Inc., and Three Big (sic) Marine, Inc.

Boat Operators' Memorandum in Opposition to Motion to Dismiss, p. 12.

The Court agrees that the remaining counterclaims are all related to the alleged overall scheme by State Bank to control Derris Griffin. However, they are neither "logically related" to the December 23, 1982 loan transaction, nor do they involve a common nucleus of operative fact with that transaction.

The counterclaim for payment by State Bank on an unauthorized and/or forged endorsement, for example, involves the assertion by Boat Operators that Derris Grif-

fin mortgaged another Boat Operators vessel, the "ELTA G", to Armco, and used the proceeds to pay off the previous mortgage to Ford Motor Credit Company. Thereafter, he deposited a check for the balance of the funds in the Boat Rentals account at State Bank. This transaction has nothing to do with the December 23, 1982 promissory note or the seizure of the two Boat Operators vessels. The other counterclaims are likewise unrelated to the transaction in question. They either involve other Griffin entities, or other unrelated incidents that occurred during the long-standing financial relationship between Derris Griffin and State Bank.

Accordingly,

IT IS ORDERED that the motion to dismiss the counterclaim for wrongful seizure is DENIED, and the motion to dismiss the remaining counterclaims is GRANTED.