**Stephen ZAYLER, Trustee of the Estate of Supreme Beef Processors, Inc. Plaintiff**

v.

**THE UNITED STATES of America and the United States Department of Agriculture Defendant**

No. 6:02–CV–570.

United States District Court, E.D. Texas, Tyler Division.

Aug. 12, 2003.

See also 113 F.Supp.2d 1048.

James Patrick Kelley, Ireland Carroll & Kelley, Tyler, for Stephen. Chapter 7 Trustee for Supreme Beef Processors Inc, plaintiff.

Ruth Harris Yeager, AUSA, U.S. Attorney's Office, Tyler, for Department of Agriculture, defendant.

### MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

Defendants United State of America ("United States") and the United States Department of Agriculture ("USDA") (col-

lectively "Defendants") have filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Having considered the parties' submissions, argument of counsel at the July 17, 2003 hearing, and the applicable law, the Court finds that Defendant's Motion to Dismiss should be **GRANTED.**

## BACKGROUND

The following facts are taken from Plaintiff's First Amended Original Complaint and are assumed to be true for the purposes of Defendants' Rule 12(b)(1) and12(b)(6) motions.[1] None of the facts stated in this background section constitute findings of fact by the Court.

Plaintiff and Debtor Supreme Beef Processors, Inc. ("Supreme Beef") was one of the largest processors and grinders of beef products in the nation and operates a plant in Dallas, Texas. Supreme Beef and the USDA entered into a number of contracts whereby the USDA purchased beef from Supreme Beef for the National School Lunch program. In addition, Supreme Beef sold large quantities of ground beef and other beef products to wholesale distributors.

The USDA is responsible for insuring the safety of the beef. The Food Safety and Inspection Service ("FSIS") has the authority to enforce several statutes affecting meat processors. On July 25, 1996, FSIS issued a final rule pursuant to the Federal Meat Inspection Act ("FMIA"), known as the Pathogen Reduction/Hazard Analysis and Critical Points ("HAACP"), which required all meat processors to develop and implement a system of preventive controls to ensure the safety of their products. FSIS determined that it would test the level of salmonella in the plant's finished products in order to evaluate the overall effectiveness of a processor's HAACP plan.

In June 1998, Supreme Beef implemented a HAACP pathogen control plan. In November 1998, the FSIS began testing Supreme Beef's finished product for Salmonella. FSIS notified Supreme Beef that it would likely fail the test and wanted Supreme Beef to take immediate action to remedy the situation. Supreme Beef attempted to do so, but it failed the second round of tests. Subsequently, Supreme Beef appealed the decision. FSIS denied the appeal. Supreme Beef offered to implement additional procedures to remedy the situation.

In August 1999, FSIS began a third round of tests. On October 19, 1999, FSIS notified Supreme Beef that it would not pass the test. FSIS also issued a Notice of Intended Enforcement Action ("Notice") wherein it stated that it would suspend activities at the plant. The Notice gave Supreme Beef until October 25, 1999 to show that its HAACP controls were satisfactory. FSIS decided to withdraw its inspector even though Supreme Beef offered to achieve the standard within 180 days.

As a result of these actions, Supreme Beef's meat could not be stamped inspected and passed. Thus, the meat could not be sold. Supreme Beef brought suit against the USDA in the Northern District of Texas alleging that the USDA had overstepped its authority in creating the Salmonella tests and sought a temporary restraining order enjoining FSIS from removing its inspectors. A temporary restraining order and a preliminary injunction were granted. Thereafter, both sides filed motions for summary judgment.

The district court granted Supreme Beef's motion for summary judgment and

---

1. Most of these facts can be found in *Supreme Beef Processors, Inc. v. United States Dep't of Agric.,* 113 F.Supp.2d 1048 (N.D.Tex.2000), aff'd, 275 F.3d 432 (5th Cir.2001).

denied the USDA's motion for summary judgment. The district court found that "[b]ecause the USDA's performance standards and Salmonella tests do not necessarily evaluate the conditions of a meat processor's establishment, they cannot serve as the basis for finding a plant's meat adulterated under § 604(m)(4)." *Supreme Beef,* 113 F.Supp.2d at 1052–53. The district court also determined that "[t]he flaw in such tests is that the presence of Salmonella is not solely—or even substantially—dependent upon sanitation in a grinder's establishment. Indeed, a plant could, in theory, be completely sanitized from top to bottom, but if the meat in it tests positive for Salmonella, the USDA could withdraw its inspectors, effectively closing a plant that is sanitary. The USDA admits as such." *Id.* at 1053.[2]

Supreme Beef filed a motion for reconsideration asking the court to prevent the USDA from enforcing the terms of the School Lunch contract. The court found that the "USDA's contractual rights as a purchaser are separate and distinct from its statutory authority as regulator." In essence, the district court held that its prior ruling did not affect the USDA's ability to enforce its contractual rights. The USDA decided to terminate its contract with Supreme Beef.

As a result of the loss of the National School Lunch program contract, bad press about failing the Salmonella test which resulted in lost contracts and the inability to procure new contracts, Supreme Beef filed for chapter 11 bankruptcy on September 25, 2000. Thereafter, the case was converted to Chapter 7 bankruptcy. The USDA filed four proofs of claim in Supreme Beef's bankruptcy. The USDA and FSIS filed two claims for $13,906.06 for services performed from April 9, 2000 through September 24, 2000.[3] The USDA Marketing Service ("AMS") filed two claims for $18,847.04 for services performed between July 23, 2000 through September 25, 2000.[4]

---

**2.** The district court concluded:

To recapitulate, the USDA attempted to withdraw its inspectors from Supreme Beef's plant for the processor's alleged violation of section 608 of the FMIA, which prohibits the USDA from approving adulterated meat for sale to the public. Supreme Beef's meat was found to be "adulterated" based upon that term's definition in subsection 601(m)(4) of the same Act. To find meat adulterated under § 601(m)(4), a processor's plant conditions must first be found to be insanitary. Because the Salmonella tests used by the USDA to evaluate Supreme Beef's plant did not necessarily measure the actual conditions of that plant, however, the agency-in effect-never found the conditions of Supreme Beef's plant insanitary and therefore had no basis for finding Supreme Beef's product adulterated under § 601(m)(4).

 * * * * * *

As this court remarked in the preliminary injunction hearing, the issue in this case is not whether Salmonella and other pathogens in meat is desirable or acceptable.

The issue, instead, is whether the USDA-in creating and attempting to enforce the performance standards and Salmonella tests at issue herein-was acting within the authority granted it by Congress. For the reasons discussed above, this court concludes that USDA's withdrawal of inspectors from Supreme Beef's production facility was not, in the circumstances presented here, an action authorized by law.

*Supreme Beef,* 113 F.Supp.2d at 1054–55.

**3.** The USDA and FSIS seeks payment for reimbursable overtime meat inspection services. *See* 21 U.S.C. § 695; 7 U.S.C. § 394; 9 C.F.R. pts. 307 & 391.

**4.** The AMS seeks payment for certification services. *See* 7 U.S.C. § 1622(h); 7 C.F.R. pt. 54.

On September 24, 2002, Stephen Zayler, Trustee of the Estate of Supreme Beef, filed an adversary complaint against the United States and the USDA. On October 31, 2002, a motion to withdraw reference was filed by the Defendants. This court granted the Defendant's motion to withdraw reference on December 4, 2002 pursuant to 28 U.S.C. § 157(d). On January 31, 2003, Supreme Beef filed a first amended original complaint ("amended complaint") asserting five causes of action, all of which sound in tort: (1) tortious interference with prospective business relations; (2) tortious interference with existing contracts; (3) slander; (4) business disparagement; (5) breach of duty to perform proper inspection. The amended complaint alleges that this court has jurisdiction pursuant to 28 U.S.C. § 1334. The substantive statute upon which the amended complaint is based is the Federal Tort Claims Act ("FTCA") and the amended complaint asserts that sovereign immunity has been waived pursuant to 11 U.S.C. § 106.

In the instant motion, Defendants argue that: (1) the USDA has not waived its sovereign immunity under § 106(b); (2) Supreme Beef is not entitled to a right of setoff pursuant to 11 U.S.C. § 106(c); (3) § 106 does not create a right of action; (4) Supreme Beef's claims are barred by the FTCA because (a) Supreme Beef failed to exhaust administrative remedies, (b) Supreme Beef's claims are barred by the statute of limitations, (c) an analogous state law duty bars Supreme Beef's claims, and (d) § 2680 exceptions to suit bar Supreme's claims; and (5) the USDA is not a proper party defendant.

### STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997). The standard of review for motions to dismiss under Federal Rule of Civil Procedure 12(b)(1) is the same as the standard for reviewing dismissals for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See Benton v. United States,* 960 F.2d 19, 21 (5th Cir.1992). A district court should not dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996). The court cannot look beyond the face of the pleadings when ruling on such a motion. *Id.* The ultimate question for the court in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff. *Lowrey,* 117 F.3d at 247. However a plaintiff, must plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992).

### WAIVER OF SOVEREIGN IMMUNITY

 The USDA claims that the doctrine of sovereign immunity applies in this case. Sovereign immunity bars all lawsuits against the United States in the absence of express Congressional consent. *Block v. North Dakota ex rel. Bd. of Univ. and Sch. Lands,* 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983); *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981) (quoting *United States v. Sherwood,* 312 U.S. 584, 586,

61 S.Ct. 767, 85 L.Ed. 1058 (194)1) ("United States, as sovereign, 'is immune from suit save as it consents to be sued, ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.' "). The USDA, as an agency of the United States, enjoys the same protection. *See Blackmar v. Guerre,* 342 U.S. 512, 515, 72 S.Ct. 410, 96 L.Ed. 534 (1952). Waiver of sovereign immunity should be narrowly construed in favor of the United States. *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33–34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992).

### i. *11 U.S.C. § 106(b)*

To support a waiver of sovereign immunity, Supreme Beef relies upon § 106(b) of the Bankruptcy Code. Section 106(b) provides:

> A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

11 U.S.C. § 106(b). The USDA contends that it did not waive its sovereign immunity under 11 U.S.C. § 106(b) because Supreme Beef's claims do not arise out of the "same transaction or occurrence" as the USDA's claims arose.

 Section 106(b) grants a limited waiver of sovereign immunity. It is based on equity, in essence, it would be unfair for a governmental unit to participate in the distributions of a bankruptcy case while at the same time shielding itself from liability. *See Ashbrook v. Block,* 917 F.2d 918, 923 (6th Cir.1990) ("The purpose of permitting a party to bring a compulsory counterclaim once the government has filed a proof of claim is to remove the perceived unfairness of allowing the government to receive a distribution from the estate without being exposed to any liability.") As is clear from the text of the statute, sovereign immunity is relinquished under § 106(b) when: (1) the bankrupt estate and the governmental unit each has a claim against the other; (2) the claim against the governmental unit is the property of the estate; and (3) the claims arise out of the same transaction or occurrence. *In re Lile,* 96 B.R. 81, 84 (Bankr.S.D.Tex.), *modified,* 103 B.R. 830 (1989) (citing *In re Davis,* 20 B.R. 519 (Bankr.M.D.Ga.1982)).

The USDA does not contest the fact that it filed proofs of claim in bankruptcy, nor does it contest that any recovery would be the property of the estate. Thus, the issue the Court must resolve is whether Supreme Beef's claims against the USDA arose out of the same transaction or occurrence out of which the USDA's claims against Supreme Beef arose. According to the legislative history, the test of the "same transaction or occurrence" in Section 106(b) is the same as would be used in determining whether a claim is a compulsory counterclaim under Rule 13(a) of the Federal Rules of Civil Procedure. 1 NORTON BANKR. L & PRAC.2d § 14:9 (2000); *Tank Insulation Int'l v. Insultherm, Inc.,* 104 F.3d 83, 85–86 (5th Cir. 1997); *see also* S. REP. NO. 95–989, at 29–30, *reprinted in* 1978 U.S.C.A.A.N. 5787, 5815–16 ("[T]he filing of a proof of claim against the estate by a governmental unit is a waiver by that governmental unit of sovereign immunity with respect to compulsory counterclaims, as defined in the Federal Rules of Civil Procedure, that is, counterclaims arising out of the same transaction or occurrence.").

Compulsory counterclaims are addressed by Federal Rule of Civil Procedure 13(a), which reads:

> [a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has

against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

FED. R. CIV. P. 13(a). The Fifth Circuit has addressed the appropriate inquiry to determine whether a claim is a compulsory counterclaim:

In making such a determination, courts should ask: (1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether res judicata would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; and (4) whether there is any logical relationship between the claim and the counterclaim.

*Tank Insulation Int'l v. Insultherm, Inc.*, 104 F.3d 83, 85–86 (5th Cir.1997) (*citing Park Club, Inc. v. Resolution Trust Corp.*, 967 F.2d 1053, 1058 (5th Cir.1992)) (*citing Plant v. Blazer Finan. Servs.*, 598 F.2d 1357, 1360 (5th Cir.1979)). "If any of these four questions results in an affirmative answer then the counterclaim is compulsory." *Id.* To determine whether a claim arises from the "same transaction or occurrence," courts have constructed analyses using as their foundation the logical relationship test developed by the Supreme Court under former Equity Rule 30. *See Moore v. New York Cotton Exch.*, 270 U.S. 593, 609–610, 46 S.Ct. 367, 70 L.Ed. 750 (1926) (" 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship."). While using the "logical relationship" concept, the Fifth Circuit gives weight to whether the claim and counter-

claim share an "aggregate of operative facts." *McDaniel*, 987 F.2d at 304. The Fifth Circuit has stated that a logical relationship exists when "the same operative facts serves as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Plant v. Blazer Financial Services, Inc. of Ga.*, 598 F.2d 1357, 1361 (5th Cir.1979).

■ The purpose of the compulsory counterclaim rule is to avoid multiplicity of suit and, thus, courts have favored a broad interpretation of the compulsory counterclaim test. *See, e.g., Sue & Sam Mfg. Co. v. B–L–S Contr. Co.*, 538 F.2d 1048, 1051–53 (4th Cir.1976). However, this rationale conflicts with the general principle that courts should strictly construe waivers of sovereign immunity. *See Sherwood*, 312 U.S. at 587, 61 S.Ct. 767. Nevertheless, the issue here is not whether Supreme Beef can or must assert a counterclaim, but instead to what extent the government waived its immunity to Supreme Beef's counterclaim when the USDA filed its proofs of claim in the bankruptcy proceeding. Keeping in mind these considerations, the Court applies the logical relationship test and concludes that Supreme Beef's claims do not arise from the same transaction or occurrence as the subject matter of the USDA's claim.

■ In the present action, the USDA's claims and the Supreme Beef's claims do not share the same core of operative facts. That is, the facts and evidence necessary to determine the USDA's claims for overtime meat inspection services and certification services have little or no relation to Supreme Beef's claims for business disparagement, tortious interference with existing contracts, tortious interference with prospective business relations, slander, and breach of a duty to perform proper

inspections. The facts which appear to form the basis of the USDA's claims are whether Supreme Beef received the services in question and whether Supreme Beef owes the USDA the sums stated in its proofs of claims. In contrast, the facts which appear to form the basis of Supreme Beef's claims are whether the USDA conducted flawed inspections, whether the USDA interfered with contracts Supreme Beef had entered into, whether the USDA communicated information regarding the cleanliness to third parties, whether the USDA slandered Supreme Beef, and whether the USDA exceeded their statutory authority in enforcing the Salmonella regulations, among others. Comparing the two, it appears that the only nexus between the USDA's claims and Supreme Beef's claims is the fact that approximately two hours of the 349.75 hours of reimbursable overtime inspection services involved testing inspection activities with regard to the Salmonella performance standard. However, looking at the time periods involved presents a different picture. Supreme Beef's claims are based on actions that occurred between June of 1998 through November 30, 1999–the time period during which FSIS implemented the Salmonella performance standard and conducted the three tests of Supreme's raw meat to determine Supreme's compliance with the standard. In contrast, the claims of the USDA are based on a different time period. The proof of claim filed by the FSIS covers the time period of April 10, 2000 through September 22, 2000. The proof of claim filed by the AMS covers the period of time between July 23, 2000 through September 25, 2000. Therefore, the events that form the subject matter of the parties' respective claims are months apart and raise separate, unrelated issues of fact. Accordingly, the Court concludes that Supreme Beef's claims do not arise from the same transaction or occurrence as the subject matter of the USDA's claim

### ii. 11 U.S.C. § 106(c)

Supreme Beef relies upon § 106(c) of the Bankruptcy Code to support a waiver of sovereign immunity. This section provides:

Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of such governmental unit any claim against such governmental unit that is property of the estate.

11 U.S.C. § 106(c). The Senate Report on Section 106 states that

the estate may offset against the allowed claim of a governmental unit ... any claim the debtor ... has against the government unit ... without regard to whether the estate's claim arose out of the same transaction or occurrence as the government's claim. Under this provision, the setoff permitted is only the extent of the governmental unit's claim. No affirmative recovery is permitted.

S. REP. NO. 95–989, at 29–30, *reprinted in* 1978 U.S.C.A.A.N. 5787, 5815–16.

■ This provision is "a narrow waiver of sovereign immunity, with the amount of the offset limited to the value of the governmental unit's allowed claim." *Hoffman v. Connecticut Dep't of Income Maintenance*, 492 U.S. 96, 101, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989). In effect, this provision allows the debtor to bring permissive counterclaims against the government, but the allowance of damages is limited to a setoff. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992).

■ Although Supreme Beef's claims against the government do not arise from the same transaction or occurrence as the USDA's claim against the Supreme Beef, Section 106(c) entitles Supreme Beef to recover up to the amount of the allowed

claim by the USDA against Supreme Beef. Therefore, the Court concludes that the USDA has waived its sovereign immunity from monetary damages to the extent of the allowable amount of the USDA's claim.

## FEDERAL TORT CLAIMS ACT

The FTCA gives district courts jurisdiction over:

civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). Thus, the FTCA waives the government's sovereign immunity with respect to tort claims against the United States for money damages. This waiver of the government's immunity is subject to a number of exceptions. 28 U.S.C. § 2680.

■■■ The Court now addresses what appears to be an issue of first impression in this Circuit. Supreme Beef argues that 11 U.S.C. §§ 106(b) and (c) constitute a separate and independent waiver of sovereign immunity apart from the FTCA. Thus, it contends that the Section 2680(a) due care function exception, the Section 2680(a) discretionary function exception, the exhaustion of administrative remedies requirement, and the exceptions to suit in Section 2680(h) of the FTCA do not present a bar to its claims. The USDA, on the other hand, argues that § 106 does not expose the government to causes of action from which they would be immune in a non-bankruptcy context. Accordingly, the Court must resolve the conflict between waiver of sovereign immunity under §§ 106(b) and (c) and the FTCA's procedural requirements and exceptions.

■■■ "Section 106 provides for a limited waiver of sovereign immunity in bankruptcy cases. Though Congress has the power to waive sovereign immunity for the Federal government completely in bankruptcy cases, the policy followed here is designed to achieve approximately the same result that would prevail outside of bankruptcy." S. REP. No. 95–989, at 29, *reprinted in* 1978 U.S.C.A.A.N. 5787, 5815. The 1994 amendments to Section 106 explicitly state that Section 106 creates no claim or cause of action. Pub.L. No. 103–394, Title I, § 113, 108 Stat. 4117 (1994). Subsection 106(a)(5) was specifically added to provide that:

Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rule of Bankruptcy Procedure, or nonbankruptcy law.

11 U.S.C. § 106(a)(5). Therefore, even though §§ 106(b) and (c) waive sovereign immunity for counterclaims against the United States, any substantive rights asserted must have an independent legal basis. Since Supreme Beef's claims sound in tort, they are subject to the substantive requirements of the FTCA which provide the exclusive remedy for tort actions against the United States. *See* 28 U.S.C. § 2679(b)(1) ("The remedy against the United States ... is exclusive of any other civil action or proceeding for money damages ...."). This result is consistent with the legislative history of § 106.

Supreme Beef cites a number of cases for the proposition that none of the substantive limitations on liability contained within the FTCA apply when proceeding under the waiver contained in § 106 including *Ashbrook v. Block*, 917 F.2d 918 (6th Cir.1990); *Anderson v. FDIC*, 918 F.2d 1139 (4th Cir.1990); *In re Inslaw*, 76

B.R. 224 (Bankr.D.C.1987). All of these cases were decided before the 1994 amendment and addition of Subsection 106(a)(5). Further, these cases dealt with the procedural issue of whether the FTCA's administrative claim process had to be complied with. *See, e.g., Ashbrook,* 917 F.2d at 923 (finding that one of the "limited changes" Congress intended by enacting § 106 was to make the FTCA's exhaustion requirement inapplicable). None of them specifically dealt with the FTCA's substantive limitations. Differentiating the substantive and procedural requirements of the FTCA is fully consistent with the cases cited by Supreme Beef and the principal that courts should construe statutes harmoniously, especially when the statutes deal with identical subject matter. *See Anderson,* 918 F.2d at 1143 (finding that § 106 should be interpreted consistently with the FTCA); *Ashbrook,* 917 F.2d at 922 (same).

Another district court reached this same result. *See In re TPI Int'l Airways, Inc.,* 141 B.R. 512 (Bankr.S.D.Ga.1992). The court in *TPI Int'l Airways* held that the substantive provisions of the FTCA, including the discretionary function exception, applied to claims relying on the waiver of sovereign immunity in § 106. *Id.* at 519. This Court agrees with the finding in *TPI Int'l Airways* and holds that the FTCA is applicable and that any waiver of sovereign immunity under §§ 106(b) and (c) does not displace the FTCA. This finding is consistent with existing case law and the legislative history of § 106. Accordingly, the Court will turn to the FTCA's exceptions.

### i. *Exhaustion of Administrative Remedies*

■ 28 U.S.C. § 2675(a) provides in pertinent part that "[a]n action shall not be instituted upon a claim against the United States ... unless the claimant shall have first presented the claim to the appropri-

ate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." The USDA contends that Supreme Beef's claims are barred by the FTCA's administrative claim requirement. The USDA argues that any waiver of sovereign immunity afforded by § 106 of the Bankruptcy Code does not obviate the requirement that Supreme Beef had to exhaust administrative remedies under the FTCA. The Court disagrees.

Almost every court that has confronted this issue has held that § 106(b) obviates the filing of an administrative claim under the FTCA. *See, e.g., Ashbrook,* 917 F.2d at 923; *In re Town & Country Nursing Serv., Inc.,* 963 F.2d 1146, 1154–55 (9th Cir.1991); *In re Kenny,* 75 B.R. 515, 521 (Bankr.E.D.Mich.1987); *In re Prudential Lines, Inc.,* 79 B.R. 167, 183 (Bankr. S.D.N.Y.1987). These courts have found § 106(b) & (c) provides a "separate and distinct" waiver in which to bring tort claims against the government. *Ashbrook,* 917 F.2d at 923. Further, it would be unfair to allow the government to take an immediate distribution from the estate, while at the same time require the debtor to wait for a final order on an administrative complaint. *Id.; In re Town & Country Nursing Serv., Inc.,* 963 F.2d at 1154–55; *In re Kenny,* 75 B.R. at 521; *In re Prudential Lines, Inc.,* 79 B.R. at 183. These courts have found that the "limited change" envisioned by Congress under § 106(b) & (c) was the elimination of the exhaustion requirement. *Ashbrook,* 917 F.2d at 923. This Court agrees with the vast majority of courts on this issue and finds that § 106(b) & (c) obviates the requirement of filing an administrative claim under the FTCA.

### ii. *Discretionary Function Exception to the FTCA*

■ Congress has carved out many exceptions to the waiver of sovereign immu-

nity under the FTCA. *See* 28 U.S.C. § 2680. If an exception applies, a district court lacks subject matter jurisdiction. *See Hayes v. United States,* 899 F.2d 438, 450–51 (5th Cir.1990). "[T]he court must 'strictly contrue' these exceptions in favor of the government." *Truman v. United States,* 26 F.3d 592, 594 (5th Cir.1994). The USDA contends that the instant matter is barred by the discretionary function exception which does not waive the United States' sovereign immunity for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government whether or not the discretion involved is abused." 28 U.S.C. § 2680(a). The nature of the conduct, and not the status of the actor, governs whether the exception applies. *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). The applicability of the discretionary function exception involves a two-step analysis. *Id.*

"[A] court must first consider whether the action is a matter of choice for the acting employee." *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). Second, the court must determine whether the element of judgment involved "is of the kind that the discretionary function exception was designed to shield." *Id.* Under this prong, the court must determine whether the challenged discretionary decisions were "based on considerations of public policy." *Id.* "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulations, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert,* 499 U.S. at 325, 111 S.Ct. 1267. The purpose of the discretionary function exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy

through the medium of an action in tort." *United States v. Varig Airlines,* 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).

In order to decide whether the discretionary function exception applies, it is important to look at Supreme Beef's complaint. The gravamen of Supreme Beef's complaint is that the USDA exceeded the scope of its statutory authority in implementing the Salmonella performance standard. In order to apply the discretionary function exception, it is imperative that the court look at the policymaking process.

The FMIA authorizes the Secretary of Agriculture to "prescribe the rules and regulations of sanitation" of the following:

> slaughtering, meat canning, salting, packing, rendering, or similar establishments in which cattle, sheep, swine, goats, horses, mules and other equines are slaughtered and the meat and meat food products thereof are prepared for commerce....

21 U.S.C. § 608. Further, the Secretary of Agriculture is required to,

> where the sanitary conditions of any such establishment are such that the meat or meat food products are rendered adulterated, ... refuse to allow said meat or meat food products to be labeled, marked, stamped, or tagged as "inspected and passed."

*Id.*

Thus, the FMIA requires the Secretary to ensure that no adulterated meat products pass the USDA inspection. *See Supreme Beef Processors, Inc.,* 275 F.3d at 434. Without passing the inspection, the products cannot be legally sold to customers. *Id.* One of the definitions of "adulterated" in the FMIA states that a meat product is adulterated if "it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may

been rendered injurious to health." 21 U.S.C. § 601(m)(4). The FMIA gives the Secretary of Agriculture "the power to create sanitation regulations and commands him to withhold meat approval where the meat is processed under insanitary conditions. The Secretary has delegated the authority under the FMIA to the Food Safety and Inspection Service." *See Supreme Beef Processors, Inc.*, 275 F.3d at 434.

The FSIS adopted regulations requiring all meat and poultry establishments to adopt preventative controls to assure product safety known as "Pathogen Reduction, Hazard Analysis and Critical Control Point Systems or HACCP." 9 C.F.R. Pt. 417. HACCP mandates that meat and poultry establishments institute a hazard control plan for reducing and controlling harmful bacteria on raw meat and poultry products. *See Supreme Beef Processors, Inc.*, 275 F.3d at 435. FSIS performs tests for the level of Salmonella in a plant's finished meat products in order to enforce HACCP. *Id.*

The Salmonella performance standards lays out standards for which inspection services will be denied to an establishment if it fails to meet the standard on three consecutive tests. 9 C.F.R. § 310.25(b). Failure of the standard for the third time "constitutes failure to maintain sanitary conditions and failure to maintain an adequate HAACP plan ... for that product, and will cause FSIS to suspend inspection services." *Id.* § 310.25(b)(3)(iii). The performance standard is determined based on FSIS's "calculation of the national prevalence of Salmonella on the indicated raw product." *Id.* § 310.25(b)(2) tbl. 2 n.a.

The decisions which underlay the implementation of the Salmonella performance standard are committed to the discretion of the Secretary of Agriculture by the FMIA and implicates public policy concerns that the FMIA authorizes the Secretary to address. The FMIA grants the Secretary broad discretion to "make such rules and regulations as are necessary for the efficient execution of the provision of ..." the FMIA to protect the health and welfare of consumers by ensuring that meat products are wholesome and unadulterated. *See* 21 U.S.C. §§ 602 & 621. The Secretary properly delegated this authority to the FSIS.

Here, Supreme Beef is not contending that the inspectors acted negligently, but instead, since the USDA exceeded its scope in implementing the Salmonella performance standard they are liable for, among others, breach of duty to perform proper inspection.[5] This Court finds that the implementation of the Salmonella performance standard was a discretionary act.

---

**5.** In its fifth cause of action "Breach of Duty to Perform Proper Inspection," Supreme Beef alleges that

[t]he USDA owed Supreme Beef the duty to perform a proper inspection within the parameter set forth by statute. The USDA failed to follow specific regulatory guidelines in performing the inspection of Supreme Beef. The USDA exceeded its authority by implementing procedures relying upon its testing of the end product in determining the sanitary conditions of the plant. In conducting these inspections in this manner, the USDA breached its regulatory, as well as its common law, duty owed Supreme Beef. The tests administered by the USDA were not tests involving the discretionary function. Instead, these were pure science-based tests relying solely on the presence of a certain amount of salmonella in the end product. The policy implemented by the USDA for determining the sanitary conditions of the plant prescribed a specific course of action to be followed. The USDA was obligated to use due care to implement a policy in compliance with its regulatory authority. By implementing a policy outside the scope of that authority, the USDA breached the duties owed to Supreme Beef.

Pl's First Am. Compl., at ¶ 23.

In *Dalehite v. United States*, 346 U.S. 15, 19–21, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), the discretionary function exception barred recovery for claims arising from a fertilizer explosion. The fertilizer had been manufactured, packaged and prepared for export according to detailed regulations as part of a federal program directed at increasing the food supply in occupied areas after World War II. *Id.* The Supreme Court found that the cabinet-level decision to institute the fertilizer program to be discretionary as were the decisions regarding the specific requirements for manufacturing, packaging and preparing the fertilizer. *Id.* at 37–38, 73 S.Ct. 956.

Almost 30 years later, the Supreme Court decided *United States v. Varig Airlines*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). In *Varig Airlines*, the plaintiffs challenged the FAA's implementation of a "spot check" system and the application of the spot check system in their case. *Varig Airlines*, 467 U.S. at 819, 104 S.Ct. 2755. The Supreme Court concluded that the "FAA's implementation of a mechanism for compliance review is a plainly discretionary activity of the 'nature and quality' protected by § 2680(a)." *Id.* The Supreme Court reasoned:

> When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind. Decisions as to the manner of enforcing regulations directly affect the feasibility and practicality of the Government's regulatory program; such decisions require the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding. Here, the FAA has determined that a program of "spot-checking" manufacturers' compliance with minimum safety standards best accommodates the goal of air transportation safety and the reality of finite agency resources. Judicial intervention in such decisionmaking through private tort suits would require the courts to "secondguess" the political, social, and economic judgments of an agency exercising its regulatory function. It was precisely this sort of judicial intervention in policymaking that the discretionary function exception was designed to prevent.

*Id.* at 819–20, 104 S.Ct. 2755; *see also Berkovitz*, 486 U.S. at 540–45, 108 S.Ct. 1954 (Bureau's formulation of policy regarding the appropriate way to regulate release of vaccine lots and officials' exercise of discretion allowed by the policy protected by the discretionary function exception).

More recently, in 1991, the Supreme Court decided *United States v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). In *Gaubert*, the Supreme Court stated:

> [w]here Congress has delegated the authority to an independent agency or to the Executive Branch to implement the general provisions of a regulatory statute and to issue regulations to that end, there is no doubt that planning-level decisions establishing programs are protected by the discretionary function exception, as is the promulgation of regulations by which the agencies are to carry out the programs. In addition, the actions of Government agents involving the necessary element of choice and grounded in the social, economic, or political goals of the statute and regulations are protected.

*Id.* at 323, 111 S.Ct. 1267.

Supreme Beef is not suing the USDA for failing to act in accord with a specific mandatory directive. Instead, the USDA

is being sued for various torts arising out its decision to implement the Salmonella performance standard. The policy itself is what is at issue. The USDA was exercising discretionary regulatory authority of the most basic kind when it implemented the Salmonella performance standard even though it was ultimately determined that the USDA exceeded its authority. The wrongful conduct alleged in the present case—the improper implementation of the Salmonella performance standard—is, if anything, a clear example of subject matter beyond the contemplated scope of the FTCA. Indeed, it would be difficult to conceive of a government activity less amenable to analogy to the private sphere than a regulatory agency's determination of its regulatory prerogatives.

Thus, although there has been a waiver of immunity pursuant to Section 106(c) of the Bankruptcy Code, Supreme Beef's claims cannot be entertained due to the discretionary function exception of the FTCA. The Court concludes that the USDA's decision to implement the Salmonella performance standard and apply that standard to Supreme Beef was a discretionary administrative decision and, therefore, the United States and its agency, the USDA, should not be held liable in tort.

### iii. Exception to Suit in Section 2680(h)

Another exception to the FTCA's waiver of sovereign immunity is set forth in section 2680(h), which provides that the United States' sovereign immunity is not waived with respect to:

[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit or interference with contract rights....

28 U.S.C. § 2680(h).

 The Fifth Circuit has stated that when determining whether a claim is one "arising out of" any of these enumerated torts, the district court must focus on the conduct upon which the plaintiff's claim is based. *See Truman v. United States*, 26 F.3d 592, 594 (5th Cir.1994). Federal courts have no jurisdiction to hear a claim if the conduct upon which a claim is based constitutes a claim "arising out of" any one of the torts listed in section 2680(h). *Id.* (citing *United States v. Neustadt*, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961)); *Commercial Union Ins. Co. v. United States*, 928 F.2d 176, 178–79 (5th Cir.1991). If a plaintiff attempts to style a claim so that it is not one that is enumerated in section 2680(h), the plaintiff's claim is still barred "when the underlying governmental conduct 'essential' to the plaintiff's claim can fairly be read to 'arise out of' conduct that would establish an excepted cause of action." *McNeily v. United States*, 6 F.3d 343, 347 (5th Cir.1993) (citing *Atorie Air, Inc. v. F.A.A.*, 942 F.2d 954, 958 (5th Cir.1991)).

Supreme Beef's first four causes of action include: (1) tortious interference with prospective business relations; (2) tortious interference with existing contracts; (3) slander; and (4) business disparagement. The Court will address each of these causes of action in turn.

 In Count I for tortious interference with prospective business relations, Supreme Beef alleges that

Supreme Beef would have entered into numerous contractual relations involving the sale of its beef with existing and prospective customers. By conducting flawed inspections .. [and] making pronouncements about the conditions of Supreme Beef's plant ... the USDA committed an independently tortious or unlawful act which prevented Supreme Beef from executing or entering into these contracts.

Pl's First Am. Compl. ¶ 19, at 6–7. In Count II for tortious interference with existing contracts, Supreme Beef alleges that

> Supreme Beef had entered into numerous contracts providing for the sale of its beef. The USDA willfully and intentionally interfered with those contracts by conducting the inspections relying upon the presence of salmonella in the end product to determine the cleanliness of Supreme Beef's plant. The USDA was not authorized to rely upon the presence of salmonella in the end product to determine the cleanliness of Supreme Beef's facility, and its actions in reliance of same were outside the scope of its authority.

Pl's First Am. Compl. ¶ 20, at 7. These two causes of action fall within the exception in § 2680(h) involving interference with contract rights. As the Fifth Circuit stated, "the words of and reasons for that exception under § 2680(h) are plain." *Williamson v. United States*, 815 F.2d 368, 378 (5th Cir.1987) (citing *Art Metal–U.S.A., Inc. v. United States*, 753 F.2d 1151 (D.C.Cir.1985)) (holding that claims of interference with prospective advantage are barred as claims for interference with contract rights); *Goodman Group, Inc. v. Dishroom*, 679 F.2d 182 (9th Cir.1982) (barring claims for tortious interference with contract); *see also Crenshaw v. United States*, 959 F.Supp. 399, 403 (S.D.Tex. 1997) ("This exclusion bars not only claims arising from negligent or intentional interference with existing contract rights, but also claims for interference with prospec-

tive economic advantage."). Here, Supreme Beef asserts that the USDA interfered with it's existing and prospective contracts. These claims fall within the plain meaning of the statutory exception and are barred by § 2680(h).[6]

█ In Count III for slander, Supreme Beef alleges that the USDA had no right to declare Supreme Beef's facility insanitary and to communicate its findings to third persons since it was acting outside the scope of its statutory authority. Pl's First Am. Compl. ¶ 21, at 7–8. Here, Supreme Beef characterizes the communications allegedly made as "slander." By its plain language, § 2680(h) precludes a party from suing the United States for libel and slander. *See Doe v. United States*, 83 F.Supp.2d 833, 838 (S.D.Tex.2000) (citing *Jimenez–Nieves v. U.S.*, 682 F.2d 1, 6 (1st Cir.1982) (libel/slander exception to FTCA barred plaintiff's claim for damages because Social Security Administration's actions in dishonoring checks implicitly communicated defamatory statements); *Williams v. United States*, 71 F.3d 502, 507 (5th Cir.1995) (upholding dismissal of defamation claim against Congressman because no defamation action is permissible under the FTCA)).

█ In Count IV for business disparagement, Supreme Beef alleges that "[t]he USDA published disparaging words about Supreme Beef. These pronouncements were false and made with the knowledge that they would result in extreme harm to

---

**6.** The Court notes that to the extent that Supreme Beef is asserting interference by the government with contracts rights existing between the government and Supreme Beef, this is not a tort, but rather, a breach of contract. *Williamson*, 815 F.2d at 378 n. 13 ("interference by the government with contract rights existing between the government and an FTCA plaintiff is merely breach of contract, not a tort at all"). Supreme Beef

has not specified the amount of monetary damages it seeks for these claims, but at oral argument it was stated that the damage suffered was somewhere in the seven figures. If a claim is brought against the United States for monetary damages in excess of $10,000 based upon a contract with the United States, it is the exclusive jurisdiction of the Court of Federal Claims. *See Amoco Production Co. v. Hodel*, 815 F.2d 352, 358 (5th Cir.1987).

Supreme Beef." Pl's First Am. Compl. ¶ 22, at 8. Focusing on the conduct asserted in the claim, it is apparent that, in essence, this is a "libel" claim. Supreme Beef's business disparagement claim is premised upon allegedly erroneous publication of information. Supreme Beef cannot artfully plead around the limitations of § 2680(h). *Truman v. United States,* 26 F.3d 592, 594 (5th Cir.1994) (If plaintiff's claim can fairly be read to arise out of conduct that would establish an excepted cause of action, it is barred, "[e]ven if a plaintiff styles a claim so that it is not one that is enumerated in section 2680(h)"). One court has noted, "[i]n determining the applicability of the § 2680(h) exception a court must look not to the theory upon which the plaintiff elects to proceed, but rather to the substance of the claim which he asserts." *Bosco v. U.S. Army Corps of Engineers, Ft. Worth Dist.,* 611 F.Supp. 449, 454 (N.D.Tex.1985) (citing *Lambertson v. United States,* 528 F.2d 441, 443 (2d Cir.1976)). The substance of Supreme Beef's claim here is libel which is barred under the FTCA.

It appears that Supreme Beef is also alleging a misrepresentation claim even though there is no mention of misrepresentation in its complaint. Nevertheless, the § 2680(h) exception encompasses claims for both negligent and intentional misrepresentation. *Saraw Partnership v. United States,* 67 F.3d 567, 569 (5th Cir. 1995).

In sum, the Court finds that Supreme Beef's claims for tortious interference with prospective business relations, tortious interference with existing contracts, slander, business disparagement, and misrepresentation asserted against the United States, and its agency, the USDA, cannot be maintained under the FTCA.

## CONCLUSION

For the reasons articulated above, the Court finds that Defendants' Motion to Dismiss should be GRANTED.

IT IS SO ORDERED.